JUNE CARTER LITTLE, ADMINISTRATOR CUM TESTAMENTO ANNEXO OF THE
ESTATE OF ZEB GRUBB LITTLE AND INDIVIDUALLY, PLAINTIFF v.
WACHOVIA BANK AND TRUST COMPANY, EXECUTOR AND TRUSTEE
UNDER THE WILL OF ZEB V. GRUBB, ALMA LEE GRUBB, W. B. HUNT,
ADMINISTRATOR OF THE ESTATE OF ROBERT LAY GRUBB, LILLIAN
HUNT GRUBB, ROBERT LAY GRUBB, JR., ROCHELLE T. GRUBB,
MARY LOUGENIA GRUBB, W. B. HUNT, GUARDIAN OF MARY LOU-
GENIA GRUBB, EDNA GRUBB LITTLE, BEULAH GRUBB FITZ-
GERALD, R. C. FITZGERALD, EULA (EULAH) GRUBB BECK, R. T.
BECK, ZETTA GRUBB WALSER, H. O. WALSER, THEO GRUBB,
MIRIAM S. GRUBB, AND JEANE H. LITTLE, DEFENDANTS.

(Filed 6 April, 1960.)

**1. Declaratory Judgment Act § 1—**

If the complaint alleges facts constituting a cause of action cognizable
under the Declaratory Judgment Act, the action will be. so determined,
notwithstanding the failure of the complaint to make specific reference
to the statute, since the facts alleged determine the nature of the relief
to be granted. G.S. 1-253, *et seq.*

**2. Same—**

A person claiming under the will of a beneficiary of a testamentary
trust may maintain an action under the Declaratory Judgment Act to
determine the estate taken by his testator under the trust.

**3. Same—**

The Declaratory Judgment Act enables courts to take cognizance of
disputes at an earlier stage than permitted by ordinary legal procedure,
and while the Act does not confer jurisdiction on the courts to determine
purely speculative matters and does not authorize anticipatory judg-
ments or advisory opinions, a party claiming a vested and presently
determinable interest under a will, controverted in good faith by other
interested parties, so that it appears that adjudication thereof will pre-
vent future litigation, the courts have jurisdiction to determine the mat-
ter even though the enjoyment of the estate claimed must be postponed
until the termination of a prior trust.

**4. Wills § 31—**

A will must be construed to ascertain the intent of the testator as
gathered from the four corners of the instrument, read in the light of
all facts and circumstances surrounding and known to the testator.

**5. Wills § 33c— Beneficiaries held to take vested interest defeasible in
the event of death without issue prior to termination of trust.**

Under the terms of a will setting up a trust estate for a period of
twenty years and directing that the entire income from the trust be paid
to designated beneficiaries in stipulated percentages and that at the
termination of the trust the *corpus* should be divided among them in
like percentages, with further provision that upon the death before
termination of the trust of any beneficiary without issue him surviving
his share should be added to the residue of the estate, *held*, the bene-

ficiaries each take an interest in the income and *corpus* vested as of the date of the death of testator, which interest is defeasible upon his death without issue him surviving prior to the termination of the trust, so that the interest of a beneficiary dying without issue prior to the termination of the trust cannot be transmitted by his will or descend to his heirs.

**6. Wills § 32—**

The presumption against partial intestacy is a rule of construction employed to ascertain the intent of testator.

**7. Wills § 33c—**

The law favors the early vesting of estates, and an estate vests as of the death of testator if there is no condition precedent to its present enjoyment save the termination of a preceding estate, unless the will itself provides a later time by express language or necessary implication, and adverbial clauses designating time do not ordinarily indicate such intent but will be construed as designating the time when the enjoyment of the estate is to begin.

**8. Same— Share of ultimate beneficiary held exempt from clause providing for defeasance upon death without issue prior to termination of trust.**

Under the terms of a will setting up a trust estate and directing that the income therefrom be paid to designated beneficiaries in stipulated percentages with provision for distribution of the *corpus* in like percentages upon the termination of the trust, with further provision that the share of any beneficiary dying without issue prior to the termination of the trust should be added to the residue of the estate, but with further provision that the share of the widow should be paid to her for life and after her death that part of the estate should go in fee simple to a designated nephew, who was regarded as a son and was a primary object of testator's bounty, *held*, the share of the nephew was not subject to the defeasance clause, and upon his death without issue during the life of the widow, his interest in remainder passd under his will to the beneficiary designated by him.

**9. Wills § 33e— Under the terms of the trust in this case, share of income of beneficiary dying without issue should be added to income for distribution.**

Under the terms of a will setting up a trust estate and directing that the entire income therefrom be paid out in designated percentages (amounting to 48%) to specified beneficiaries, except for the widow, who was to receive the residue of the income, with further provision that if any beneficiary should die without issue him surviving, prior to the termination of the trust, his share should be added to the residue, *held*, upon the death of one of the beneficiaries without issue him surviving his share of the income should not be added to the *corpus* of the trust, since the will directed that all the income should be disbursed, but such share of the income should be added to the residue of the income estate and paid to the widow during the term of her life.

**10. Wills § 38—— Under terms of this trust, lapsed legacy of person who was also residuary legatee held not to pass under residuary clause.**

Under the terms of a will setting up a trust and directing that the income therefrom be paid to designated beneficiaries in specified percentages, with the widow to receive the income from the residue for life, and that the *corpus* of the trust should be divided in like percentages twenty years after testator's death, except for the share of the widow, which should go in fee to one of the beneficiaries theretofore named, with further provision that if any beneficiary should die without issue him surviving his share should be added to the residue of the estate, *held* upon the death without surviving issue of the beneficiary who was also the residuary beneficiary of the widow's share, his share of the percentage of the *corpus* of the estate is divested and cannot go to his legatees or distributees even though such beneficiary was also the ultimate beneficiary in fee of that part held for the widow for her life, and as to such share the testator died intestate.

**11. Wills § 32——**

The presumption against partial intestacy is merely a rule of construction, and cannot have the effect of transferring property in the face of contrary provisions of the will.

**12. Wills § 33e——**

Under the terms of a will bequeathing a business interest to testator's brother, with a further bequest of a percentage of the income from a trust estate from which was to be deducted the net value of the business interest theretofore bequeathed, *held*, the deductions from the brother's share of the income in the amount of the specific bequest was properly added to the *corpus* of the trust, and was not income to be disbursed to the income beneficiaries.

**13. Trusts § 19——**

Where discretion is vested in the trustees in determining what items should be considered income and what items *corpus* of the estate, the exercise of such discretion will not be disturbed unless in contravention of the intent of testator as expressed in the instrument or unless the discretion is manifestly abused.

**14. Wills § 39:   Costs § 4——**

Under the provisions of G.S. 6-21, the court properly directs in the exercise of its discretion that the costs of an action to construe a will, including reasonable counsel fees, be paid out of the *corpus* of the estate.

APPEALS by defendants (other than Alma Lee Grubb, Edna Grubb Little and Jeane H. Little) from *Thompson, S. J.,* July 1959 Special Term of DAVIDSON. Docketed and argued as case No. 382 at Fall Term, 1959.

This action was instituted pursuant to the Declaratory Judgment Act, G.S. 1-253 *et seq.,* for construction of certain trust provisions of the will of Zeb Vance Grubb, deceased.

Zeb Vance Grubb died testate 31 August 1949. His will, dated 5 March 1946, and a codicil dated 30 April 1946, were admitted to probate 8 September 1949. The codicil is not involved here. Specific devises and bequests, valued at $51,844.28, are not in controversy.

The pertinent provisions of the will are:

"Article VI. I give and bequeath to my brother, Robert Grubb, all of my stock in the Grubb Motor Lines, Inc., together with any and all indebtedness due me by Grubb Motor Lines, Inc."

"Article XIV. I give, bequeath and devise all of the residue and remainder of my property and estate, of every nature whatever and wheresoever situated, to Wachovia Bank and Trust Company and Zeb Grubb Little, as Co-Trustees, in trust for the following uses:

"(1) The entire net income derived from my trust estate shall be paid monthly, or quarterly, after the expiration of three years from the date of my death and probate of this will, to the following:

"(a) Edna Grub Little, four per cent.

(b) Beulah Grubb Fitzgerald, four per cent.

(c) Eula Grubb Beck, four per cent.

(d) Theo Grubb, four per cent.

(e) Emma Grubb, four per cent.

(f) June Carter Little, four per cent.

(g) Zeb Grubb Little, four per cent.

(h) Robert Grubb, twenty per cent, from which is to be deducted the net value of the bequest in Article VI.

(i) The residue, or remainder, to my wife, Alma Lee Grubb, for and during the term of her natural life, and after her death to my nephew, Zeb Grubb Little. In the event that my wife, Alma Lee Grubb shall not be living at the time of my death, then the said residue is to go to the said Zeb Grubb Little.

"This trust to remain and continue for the period of twenty (20) years from and after my death and probate of this will. I hereby direct that payment, or payments, under this paragraph shall be made to the ones designated herein, in person, and shall not be assigned, transferred or conveyed.

"(2) If either of the above named, Edna Grubb Little, Beulah Grubb Fitzgerald, Eula Grubb Beck, Theo Grubb, June Carter Little, Zeb Grubb Little, or Robert Grubb, should die prior to the full and final termination of the trust herein created, and if he or she shall leave lawful issue surviving him or her, said parties' share, or the undistributed portion thereof, shall inure to the benefit of his or her surviving issue. And in the event that either of said

parties shall die without leaving lawful issue surviving him or her, their respective shares shall be added to the residue of my estate. In the event that Emma Grubb should die prior to the termination of this trust, her share shall go to my niece, Lou Grubb.

"Article XV. At the expiration of twenty (20) years from the date of my death or probate of this will, this trust shall thereupon terminate and the title to said remaining property shall immediately vest as follows:

(1) Edna Grubb Little, four per cent.
(2) Beulah Grubb Fitzgerald, four per cent.
(3) Eula Grubb Beck, four per cent.
(4) Theo Grubb, four per cent.
(5) Emma Grubb, four per cent.
(6) June Carter Little, four per cent.
(7) Zeb Grubb Little, four per cent.
(8) Robert Grubb, twenty per cent.
(9) To Wachovia Bank and Trust Company and Zeb Grubb Little, as Co-Trustees for Alma Lee Grubb, for and during the term of her natural life, the remainder, and after her death, the same shall immediately vest in Zeb Grubb Little, in fee simple forever. In the event that my wife, Alma Lee Grubb shall not be living at the time of my death, then the said residue is to go to the said Zeb Grubb Little. In the event that either of the above parties should die prior to the final termination of the trust herein created, and if he or she shall leave lawful issue surviving him or her, such parties' share shall inure to the benefit of his or her surviving issue, with the exception of Emma Grubb, whose share shall go to my niece Lou Grubb. The other share, or shares, of either of the parties who should die before the termination of this trust without leaving lawful issue, shall inure to the residue or remainder of this trust estate.

"Article XVI. This trust is to continue as to the share of Alma Lee Grubb for and during the term of her natural life, and at her death to be terminated and said interest to vest in Zeb Grubb Little, in fee simple.

"Article XVII. I nominate and appoint Wachovia Bank and Trust Company . . . and Zeb Grubb Little, to be Co-Executors of this will. I also authorize the said Trust Company and Zeb Grubb Little, acting in its and his capacity either as Executors or as Trustees, in the exercise of their discretion, . . . to determine what is principal and what is income and what expenses or other charges shall be charged against income and what against principal . . ."

The beneficiaries named in the articles of the will above set out are mother, wife, brothers, sisters, niece and nephews of testator. He died without issue.

Emma Grubb was testator's mother and predeceased him.

The executors and trustees withheld from the income share of Robert Grubb in the twenty year trust the sum of $20,803.28 as payment of the value of the bequest in Article VI of the will, and placed this sum of $20,803.28 in the *corpus* or principal of the trust.

Robert Grubb died intestate on 24 April 1950 leaving issue. His heirs and next of kin are his widow, Lillian Hunt Grubb, and children, Robert Grubb, Jr. and Lou Grubb. Lou Grubb is a minor. W. B. Hunt is administrator of the estate of Robert Grubb and general guardian of Lou Grubb.

Zeb Grubb Little died testate on 20 November 1954, leaving no widow or issue surviving. His brother, June Carter Little, is administrator, c. t. a., of his estate and the sole beneficiary under his will. June Carter Little, individually and as administrator, c. t. a., of Zeb Grubb Little's estate, is plaintiff in this action. Edna Grubb Little is mother and Jeane H. Little is wife of June Carter Little.

Since the death of Zeb Grubb Little the surviving trustee under the will of Zeb Vance Grubb has kept in a separate account and undistributed the four per cent share of Zeb Grubb Little in the trust income which has accrued since his death. On 8 May 1959 there was in this separate account $3,500.00 in United States Treasury bonds and $1,137.01 in cash.

On the date of the judgment in this action all the beneficiaries named in Articles XIV, XV and XVI were living except Emma Grubb, Robert Grubb and Zeb Grubb Little.

The matters in controversy are indicated in the following summaries of the pleadings.

COMPLAINT: "This action involves the construction of the will of Zeb Vance Grubb and the disposition of his residuary estate." Zeb Grubb Little died on 20 November 1954, leaving no issue and he willed all his property to the plaintiff, June Carter Little, and June Carter Little now owns whatever devisable interests Zeb Grubb Little had under the will of Zeb Vance Grubb. After the death of Zeb Grubb Little without issue, his four per cent share in the trust income was distributable to Alma Lee Grubb, widow of Zeb Vance Grubb during the term of her natural life. Should she die before the termination of the twenty year trust, this four per cent share of income will be distributable to plaintiff from the time of her death to the termination of the trust. Plaintiff is the owner of the remainder interest in the

*corpus* of the Alma Lee Grubb share of the trust as set out in Article XV, paragraph (9) and Article XVI of the will, together with any additions thereto by reason of beneficiaries named in Article XV, paragraphs (1) to (8) dying without issue. The interests of Zeb Grubb Little under the will of Zeb Vance Grubb vested at the death of Zeb Vance Grubb and were descendible and devisable and are now owned by plaintiff as sole legatee under the will of Zeb Grubb Little. Plaintiff has right to have his interest in the estate of Zeb Vance Grubb declared. It is necessary in his business that he know with certainty the extent of his property in making financial statements and arranging credit. Without certainty in this respect he cannot plan the disposition of his property during his lifetime or by will. He is administrator, c. t. a., of the estate of Zeb Grubb Little and cannot file proper accounts with the Clerk of Superior Court without this information. The trustee needs direction for disposal of the four per cent income account and plaintiff is interested in the disposition thereof since it affects his remainder interest.

ANSWER of W. B. Hunt, administrator of Robert Grubb estate, W. B. Hunt, guardian of Lou Grubb, Lillian Hunt Grubb, Robert Grubb, Jr., Rochelle T. Grubb and Lou Grubb: Upon the death of Zeb Grubb Little without issue, all his interests, principal and income, under Articles XIV, XV and XVI of the will lapsed, they were not descendible or devisable, became a part of the *corpus* of the residuary estate and augmented the shares of the other legatees *pro tanto* (except that of Lou Grubb). The money withheld from the income share of Robert Grubb in payment of the value of the bequest in Article VI is a part of the *corpus* of the trust estate.

ANSWER of Beulah Grubb Fitzgerald, R. C. Fitzgerald, Eula (Eulah) Grubb Beck, R. T. Beck, Zetta Grubb Walser, H. O. Walser, Theo Grubb and Miriam S. Grubb: When Zeb Grubb Little died without issue, all his interests, principal and income, under Articles XIV, XV and XVI of the will lapsed, they were not descendible or devisable, and are distributable by intestate succession to the heirs at law and next of kin of Zeb Vance Grubb. The sum deducted from the income share of Robert Grubb to pay the value of the bequest in Article VI is a part of the *corpus* of the residuary estate.

ANSWER of Alma Lee Grubb: She is entitled to receive the four per cent income share of Zeb Grubb Little which has accrued since his death, is entitled to receive this share of the income which shall hereafter accrue during her lifetime, and is entitled to have the corresponding four per cent of the trust *corpus* placed in the residue from which her income share is computed. She is entitled to the funds with-

held from the income share of Robert Grubb in the amount of the value of the bequest in Article VI, since it is a part of the residue and remainder of income to which she is entitled under the will. Attorneys' fees should not be taxed as a part of the costs of the action and paid from the residuary estate, since this would require her to pay an inequitable portion; the parties should pay their respective attorneys individually.

ANSWER of Wachovia Bank and Trust Company, surviving trustee under the will of Zeb Vance Grubb: It has an honest doubt as to the proper distribution of the four per cent share of income, formerly payable to Zeb Grubb Little, which has accumulated since his death and will continue to accrue until the termination of the twenty year trust in 1969; it desires a proper declaration as to this item. The $20,803.28 withheld from the income share of Robert Grubb is properly a part of the *corpus* of the trust estate, and this has been determined by this trustee, in its discretion, under authority given in the will. All other issues are remote, premature and unnecessary for the present guidance of the trustee and the court is without jurisdiction to determine them. Costs should be taxed only against the shares in the trust about which there is a present controversy.

All interested parties and their spouses are parties to this action.

The findings of fact and judgment exclusive of facts stated hereinabove, are as follows:

"This cause coming on to be heard . . . and being heard by the Court, with the consent of all parties, without a jury, upon a consideration of the evidence, both oral and documentary and the arguments of counsel, the Court makes the following findings: . . .

"5. . . . The plaintiff and the defendants are all persons who have any interest in the subject of this action. All of the defendants have been served, all of them have filed answers, and all of them were represented by counsel at the hearing of the cause, with the exception of the defendant Edna Grubb Little, the mother of the plaintiff, who did not file answer, and Jeane H. Little.

. . . . .

"8. The defendant, Edna Grubb Little, was the oldest of the testator's brothers and sisters. On August 19, 1936, she was living with her husband, Andrew Jackson Little, in Pine Hall, North Carolina, where her husband was engaged in business. She had two sons, the plaintiff, June Carter Little, who was born June 5, 1922 and Zeb Grubb Little, now deceased, who was born August 23, 1926. On August 19, 1936 her husband was killed in an accident, leaving her with her two sons, ages fourteen and ten. At this time, the testa-

tor made available to her a house and lots owned by him and located near his own home west of Lexington, North Carolina. She moved into this house with her sons, and the testator gave her a fee simple deed to the property in 1937, . . . She still occupies this property as her home. She had some property of her own which she acquired from her husband, but, beginning about 1940 she found it necessary to supplement her income by obtaining work in Lexington, North Carolina. The two sons went to school in Lexington. The sons had visited the testator and his wife in the summers prior to the time that they moved, but after they moved to Lexington, both of them spent a great deal of time in the home of the testator and his wife. In the afternoon after school, Zeb Grubb Little frequently went to his uncle's office in Lexington and stayed with him until time to go home, running errands and doing small jobs for which he was qualified. About 1940, Zeb Grubb Little moved into the home of the testator and his wife and lived there, first with his uncle and aunt, and then with his aunt until his death on November 20, 1954. In 1942, the testator sent his nephew to North Carolina State College and he was a student there about one and one-half (1 ½) years prior to his entry into the United States Army. After the war, he was discharged and came back to Lexington in the fall of 1945. After Christmas, he re-entered the University of North Carolina and graduated in June, 1949. His uncle paid all of his expenses and otherwise maintained him except for government assistance which he obtained for his education after the war. His uncle kept him supplied with an automobile while he was a student at Chapel Hill, and on his twenty-first birthday, in 1947, gave him a new Oldsmobile convertible. When Zeb Grubb Little was not in the Army or in school, he worked for his uncle, doing such tasks as he was capable of, including working in filling stations which were owned and operated by his uncle. After his graduation at Chapel Hill in 1949, he began to work regularly for his uncle, for which he was paid a salary of $50.00 per week. This continued for a short time only, since the testator died on August 31, 1949. The testator was interested in flying and flew his own airplane. Zeb Grubb Little learned to pilot airplanes also, using airplanes belonging to his uncle. Prior to his death, the testator made a number of gifts to Zeb Grubb Little in addition to the Oldsmobile convertible already referred to. About 1948, he gave him a diamond ring and two hundred (200) shares of the common stock of General Motors Corporation. He also gave him a one-half interest in a tract of land which he, the testator, acquired from the other heirs of his

mother. The other one-half interest in the land which had been owned by the testator jointly with his mother was given to the testator's wife.

"9. In July, 1947, a little more than a month prior to the twenty-first birthday of Zeb Grubb Little, the testator and his wife had prepared by Mr. J. Giles Hudson, a lawyer of Salisbury, North Carolina, a petition for the adoption by them of Zeb Grubb Little. Mr. Hudson prepared also an interlocutory order in the adoption proceeding. The petition was duly verified by both the testator and his wife and it was filed in the office of the Clerk of the Superior Court of Davidson County, North Carolina, on July 17, 1947, and the interlocutory order was entered by the Clerk on the same day. The testator told Mr. Hudson that his nephew was almost twenty-one years of age and that he wanted to get the papers filed before his twenty-first birthday. The testator told Mr. Hudson that he considered Zeb Grubb Little as his son and that that was the reason he wished to adopt him. This was assigned both in the petition and in the interlocutory order as the reason for the adoption. The testator never completed the proceeding. He did not give Mr. Hudson any direction to discontinue it. The evidence, which was undisputed, discloses that the testator had for his nephew, Zebb Grubb Little, the love and affection of a father for his son, and the Court so finds.

"10. The adjusted gross estate of Zeb Vance Grubb as of the date of his death as finally agreed upon between the Executors and the Federal Income Bureau Service was $787,931.21. Adjusted gross estate means the net estate after deducting debts, costs of administration and other charges against the estate but before deducting the federal estate tax and the North Carolina inheritance tax. The federal estate tax paid was $146,908.67. The North Carolina inheritance tax paid was $34,351.69. The book value of the net residuary estate as of December 1952, but without reflecting any increase in value or depreciation, was approximately $407,000.00. The net residuary estate now exceeds $500,000.00 in value, but there was no other evidence as to its value at the present time.

. . . . .

"12. The first distribution of income to the beneficiaries under Article XIV of the will was made on November 26, 1952, after the Supreme Court of North Carolina had construed Article XIV, Paragraph (1) of the will holding that the income beneficiaries were entitled to the income from the date of death. At that time, except for the provisions of Article XIV, Paragraph (1), subparagraph (h), Robert Lay Grubb would have been entitled to $16,465.89. The

Executors at that time, the defendant Wachovia Bank and Trust Company, and Zeb Grubb Little, added this amount to the principal of the residuary estate. Thereafter, the Executors withheld income which would otherwise have been payable to Robert Lay Grubb until the entire amount of $20,803.28 had been withheld. None of this income was distributed to beneficiaries. All of it was withheld and held in the principal of the trust. This fund has not been segregated from the other assets of the trust. All net income derived from the investment thereof has been paid to beneficiaries under Article XIV of the will, except as hereinafter set forth in regard to the share of Zeb Grubb Little.

"13. Since the death of Zeb Grubb Little on November 30, 1954, Wachovia Bank and Trust Company, as Trustee, has distributed none of the income accruing under Article XIV, Paragraph (1), subparagraph (g) of the will, but has held that income in a separate account. On May 8, 1959, it held $3,500.00 in United States Treasury Bonds and $1,137.01 in cash. The Bonds and the cash are segregated on the books of the Trustee from the other assets of the estate and are identifiable.

"14. The court has considered the evidence, the entire will of Zeb Vance Grubb, the positions of the parties as set forth in their pleadings, in the arguments of counsel, and in briefs filed with the Court. Its conclusions of law upon the issues raised and decided are hereinafter set forth in that part of this judgment which adjudicates the rights of the parties.

"NOW, THEREFORE, upon the foregoing findings,

"It is hereby ORDERED, ADJUDGED AND DECREED:

"(A) The Court has jurisdiction of this cause and of all the issues which are adjudicated herein.

"(B) Upon the death of Zeb Grubb Little on November 20, 1954, and thereafter, the four per cent (4%) of the income of the trust originally payable to him under Article XIV, Paragraph (1), subparagraph (g) of the will became a part of the residue or remainder of the income of the trust under Article XIV, Paragraph (1), subparagraph (i) of the will. The amount accumulated in the hands of the Trustees since the death of Zeb Grubb Little, with all income earned from the investment thereof, is payable to the defendant Alma Lee Grubb. All of such four per cent (4%) of the income payable shall constitute a part of the residue of the income under subparagraph (i) and shall be payable to Alma Lee Grubb so long as she shall live or until the termination of the trust. The right to receive the income of the residue or remainder of the trust

under the said subparagraph (i) after the death of Alma Lee Grubb, including additions thereto upon the death of a beneficiary prior to the termination of the trust without leaving issue surviving him or her, was vested in Zeb Grubb Little at the death of Zeb Vance Grubb, and such right was descendible and devisable and is now owned by the plaintiff June Carter Little, as sole legatee under the will of Zeb Grubb Little.

"(C) The right of Zeb Grubb Little to receive four per cent (4%) of the *corpus* of the trust under Article XV, Paragraph (7) of the will terminated so far as that paragraph is involved upon his death without issue on November 20, 1954, and the said four per cent (4%) interest in the *corpus* became a part of the residue or remainder of the *corpus* under Article XV, paragraph (9).

"(D) The right to receive the residue or remainder of the *corpus* of the trust under Article XV, Paragraph (9) of the will, including additions thereto upon the death of a beneficiary prior to the termination of the trust without leaving issue surviving him or her, upon the death of Alma Lee Grubb, or at the termination of the trust if Alma Lee Grubb should die prior to the termination of the trust, was vested in Zeb Grubb Little at the death of Zeb Vance Grubb, and such right was descendible and devisable and is now owned by the plaintiff, June Carter Little, as sole legatee under the will of Zeb Grubb Little.

"(E) The right to receive four per cent (4%) of the income of the trust under Article XIV, Paragraph (1), subparagraph (e) and four per cent (4%) of the *corpus* of the trust under Article XV, Paragraph (5), at the termination of the trust, originally given by the will to Emma Grubb, the mother of Zeb Vance Grubb, lapsed by reason of the death of Emma Grubb prior to the death of Zeb Vance Grubb, and the right to receive the said income and the said *corpus* was vested in Mary Lougenia Grubb, the alternative beneficiary at the death of Zeb Vance Grubb, and such right in both the income and *corpus* is descendible and devisable.

"(F) The right to receive twenty per cent (20%) of the income of the trust under Article XIV, Paragraph (1), subparagraph (h) and twenty per cent (20%) of the *corpus* of the trust under Article XV, Paragraph (8), at the termination of the trust, originally given by the will to Robert Lay Grubb, the brother of Zeb Vance Grubb, lapsed by reason of the death of Robert Lay Grubb on April 24, 1950, and the right to receive the said income and the said *corpus* was immediately vested in his surviving issue, Robert Lay Grubb,

Jr. and Mary Lougenia Grubb, in equal shares, and the right of each such beneficiary to receive the said income and the said *corpus* is descendible and devisable.

"(G) Under Article XIV, Paragraph (1), subparagraph (h), the Trustees were required to withhold from the twenty per cent (20%) of the income payable to Robert Grubb during his life and payable to Robert Lay Grubb, Jr. and Mary Lougenia Grubb after his death the amount of the net value of the bequest to Robert Lay Grubb under Article VI of the will, and the income so withheld retained its character as income, became a part of the residue or remainder of the income from the trust under Article XIV, Paragraph (1), subparagraph (i) and is payable to the defendant Alma Lee Grubb. No finding or adjudication has been made as to the amount the Trustees were required to withhold and this judgment is limited solely to the construction of the provisions of the will, but without prejudice to any right which the parties, or any of them, may have, either in this action or in some other action brought for the purpose, to fix the amount to which Alma Lee Grubb is entitled, by whom or out of what property it shall be paid, whether interest or income shall be allowed thereon and any defenses which any party may have, including, but not limited to, the defenses of *laches* or the statute of limitations.

"(H) The direction given to the Executors and Trustees by the last sentence of Article XII of the will relating to leasing filling stations to Zeb Grubb Little was personal to Zeb Grubb Little and lapsed at his death, and Wachovia Bank and Trust Company is under no obligation by reason of the provisions of Article XII to lease the said filling station to June Carter Little.

"(I) The date fixed by Articles XIV and XV of the will for the termination of the trust is 20 years from the probate of the will, namely September 8, 1969.

"(J) The costs of this action, including the compensation of counsel allowed by separate order on this date, shall be paid by the defendant, Wachovia Bank & Trust Company, Trustee, out of the *corpus* of the trust, and such costs shall be allowed to it in its accounting.

"(K) This cause is retained for further orders."

From the foregoing judgment all defendants, except Alma Lee Grubb, Edna Grubb Little and Jeane H. Little, appealed and assigned errors.

*Charles W. Mauze and Womble, Carlyle, Sandridge & Rice for defendant Wachovia Bank and Trust Company, Executor and Trustee, appellant.*

*Stoner & Wilson and DeLapp & Ward for defendants Beulah Grubb Fitzgerald, Eula (Eulah) Grubb Beck, R. T. Beck, Zetta Grubb Walser, H. O. Walser, Theo Grubb and Miriam S. Grubb, appellants.*

*Walser and Brinkley and Gaither S. Walser for defendants W. B. Hunt, Administrator of the Estate of Robert Lay Grubb; Lillian Hunt Grubb, Robert Lay Grubb, Jr., Rochelle T. Grubb, Mary Lougenia Grubb, W. B. Hunt, Guardian of Mary Lougenia Grubb, appellants.*

*Vaughn, Hudson, Ferrell & Carter for plaintiff, appellee.*

*Frank P. Holton, Jr., for defendant Alma Lee Grubb, appellee.*

MOORE, J. All the diverse interests agree that there are at least two presently subsisting controversies affecting the trust estate of Zeb Vance Grubb which should be resolved for the guidance of the trustee in administering the trusts: (1) the correct disposition of the four per cent income share willed to Zeb Grubb Little which has accrued since his death and will continue during the existence of the trust, and (2) the proper disposal of the sum of $20,803.28 which was retained from the twenty per cent income share of Robert Grubb as the net value of the bequest in Article VI of the will of Zeb Vance Grubb. The other controversies involving construction of provisions of the will are, according to the contention of Wachovia Bank and Trust Company, trustee, remote, premature and unnecessary for the present management of the trust and the court lacks jurisdiction to determine them at this time.

This action was instituted pursuant to the Declaratory Judgment Act, G.S. 1-253 *et seq.* The complaint makes no specific reference to the Act, but there is no statutory requirement that such reference be made. "It is the facts alleged that determine the nature of the relief to be granted." *Bolich v. Insurance Company*, 206 N.C. 144, 150, 173 S.E. 320; *Wright v. McGee*, 206 N.C. 52, 55, 173 S.E. 31.

Plaintiff is sole devisee and legatee of Zeb Grubb Little. And Zeb Grubb Little is a named beneficiary in the testamentary trust of Zeb Vance Grubb's estate. Plaintiff claims property rights and interests in the trust estate. "Any person interested under a . . . will . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status or other legal relations thereunder." G.S. 1-254. "Any person interested as or through (a) . . . devisee, legatee . . . in the adminis-

tration of a trust, or of the estate of a decedent . . . may have a declaration of rights or legal relations in respect thereto . . . to determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings." G.S. 1-255.

The courts have no jurisdiction to determine matters purely speculative, enter anticipatory judgments, declare social status, deal with theoretical problems, give advisory opinions, answer moot questions, adjudicate academic matters, provide for contingencies which may hereafter arise, or give abstract opinions. *Finch v. Honeycutt,* 246 N. C. 91, 101, 97 S.E. 2d 478; *Trust Co. v. Schneider,* 235 N.C. 446, 454, 70 S.E. 2d 578; *Light Co. v. Iseley,* 203 N.C. 811, 819, 167 S.E. 56; *Reid v. Alexander,* 170 N.C. 303, 304, 87 S.E. 125. "The Uniform Declaratory Judgment Act does not license litigants to fish in judicial ponds for legal advice." *Lide v. Mears,* 231 N.C. 111, 117, 56 S. E. 2d 404. An order directing distribution of *corpus* in the event of the death of the contingent beneficiary prior to the time fixed by the will must be vacated. *Trust Co. v. Schneider, supra.* But "this act is remedial; its purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." *Walker v. Phelps,* 202 N.C. 344, 349, 162 S.E. 727. "Where, . . . it appears from the allegations of the complaint in an action instituted under the authority and pursuant to the provisions of the act, (1) that a real controversy exists between or among the parties to the action; (2) that such controversy arises out of opposing contentions of the parties, made in good faith, as to the validity or construction of a . . . will . . .; and (3) that the parties to the action have or may have legal rights, or are or may be under legal liabilities which are involved in the controversy, the court has jurisdiction, and on the facts admitted in the pleadings or established at the trial, may render judgment, declaring the rights and liabilities of the respective parties, as between or among themselves, and affording the relief to which the parties are entitled under the judgment." *Light Co. v. Iseley, supra,* at page 820. It has been held by this Court that the question as to whether or not adopted children are contingent remaindermen under the provisions of a testamentary trust is justiciable even though the contingency has not happened and the children may not be living at the time the contingency arises. *Trust Co. v. Green,* 238 N.C. 339, 344, 78 S.E. 2d 174. There it is said: "It is purely a question of law, now determinable, and nothing except the death of all three of the adopted children . . . prior to the death of the last survivor of the niece and nephew of the

testator can obviate the necessity for its determination. This contingency, in our opinion, does not justify the postponement of a decision thereon. . . . The adoptive parents are entitled to know whether or not these children will share . . . Doubtless, plans for the future of the children will be governed somewhat by the answer to this question." The court has jurisdiction if the judgment will prevent future litigation. *Bradford v. Johnson,* 237 N.C. 572, 577, 75 S.E. 2d 632. The validity of the assignment of an interest by a legatee may be adjudicated. *Trust Co. v. Henderson,* 226 N.C. 649, 39 S.E. 2d 804. The Act enables courts to take cognizance of disputes at an earlier stage than that permitted by ordinary legal procedure, if the controversy is real and actually exists between parties having adverse interests. *Lide v. Mears, supra,* at page 118.

Plaintiff contends, as the sole devisee and legatee of Zeb Grubb Little, he has a vested estate and interest in fee in a substantial portion of the *corpus* of the trusts created by the will of Zeb Vance Grubb and has certain rights with respect to the trust income. He asks that his rights be declared. His contentions are strongly controverted. It is our opinion that plaintiff is entitled to have his rights and interests determined, though his enjoyment thereof, if any he has, must of necessity be postponed. It is a controversy which must in any event be determined at this or a future date. Plaintiff asserts that his rights are not contingent but vested, he is the ascertained owner thereof, and his ownership is indefeasible. He insists further that, as administrator, c. t. a., of the Zeb Grubb Little estate, he is entitled to know with certainty of what that estate consists in order to make correct accounting and proper tax returns. He also contends that as a business man it is important that he know with reasonable accuracy the extent of his property in making financial statements and establishing credit rating, and, further, that without this information he cannot plan the proper disposition of his property during his lifetime or by will.

In any event, it is necessary to construe the pertinent provisions of the will in order to determine the matters which all agree are presently in controversy. While the cause is here, we have jurisdiction and ought to determine those matters in controversy which of necessity must be ultimately determined in any event, whether the declaration of rights is needful to the trustee presently or not. This course will prevent litigation and save the expense of a multiplicity of suits. Of course, we do not undertake and have no jurisdiction to resolve all possible contingencies and we do not anticipate the happening of

events which in the course of administering the trust may never transpire.

It must be conceded, in the light of occurrences since the death of the testator, that the trust provisions of the will of Zeb Vance Grubb contain ambiguities and apparent contradictions. Questions for judicial construction are presented. In such circumstance, the fundamental object in construing the will is to discover and effectuate testator's intention. This intention must be arrived at by an examination of the will, from its four corners, when read in the light of all surrounding facts and circumstances known to the testator. *Entwistle v. Covington,* 250 N.C. 315, 318, 108 S.E. 2d 603; *Van Winkle v. Missionary Union,* 192 N.C. 131, 134, 133 S.E. 431.

From the uncontroverted findings of fact and the will itself we reach the following conclusions which bear on the intent of the testator: (1) Zeb Vance Grubb was an experienced, successful and discriminating man of affairs, had various business interests and left a substantial estate; (2) the net value of his residuary estate at the time of his death in 1949 was approximately $400,000.00; (3) he had no children and was survived by his wife, brother, sisters, nieces and nephews; (4) he had taken his nephew, Zeb Grubb Little, into his home, educated him and had for him "the love and affection of a father for his son"; (5) he desired his residuary estate to be held in active trust for twenty years, in any event, and all income therefrom to be paid to specified beneficiaries, all of whom are family connections; (6) he provided that these income gifts should be personal to the beneficiaries, not to be assigned, transferred or conveyed; (7) at the termination of the twenty year trust the *corpus* is to be divided among the beneficiaries in the same proportion as the income gifts, except that in case of the widow the trust is to continue until her death should she live beyond the twenty year term, and at her death the *corpus* to go to Zeb Grubb Little, and (8) the primary objects of testator's bounty were the widow, Alma Lee Grubb, and nephew, Zeb Grubb Little.

In construing the provisions of the will, we find the problem less difficult if the several phases are considered separately and are reduced to their simplest terms without omission of essentials.

In Articles XIV and XV it is provided that six of the beneficiaries, including Zeb Grubb Little, shall each receive four per cent of the income from the trust estate for twenty years, then, as to all of these, the trust shall terminate and each shall receive four per cent of the *corpus* of the trust absolutely. Should any of them die before the termination of the trust, the interest and *corpus* shall go to their re-

spective surviving issue, but if any die without issue surviving, "their respective shares shall be added to the residue of (the) estate." Testator's brother, Robert Grubb, was given a twenty per cent share of income and *corpus* on the same terms.

Under the foregoing provisions, each of the seven beneficiaries, at the death of Zeb Vance Grubb, had a vested interest, subject to the twenty year trust, in his or her respective share in fee, defeasible upon dying without issue before the termination of the trust. G.S. 41-4; *Ziegler v. Love,* 185 N.C. 40, 42, 115 S.E. 887; *Love v. Love,* 179 N. C. 115, 117, 101 S.E. 562; *Bizzell v. Building Association,* 172 N.C. 158, 160, 90 S.E. 142; *Smith v. Lumber Co.,* 155 N.C. 389, 392, 71 S. E. 445; *Elkins v. Seigler,* 154 N.C. 374, 375, 70 S.E. 636; *Dawson v. Ennett,* 151 N.C. 543, 545, 66 S.E. 566. Zeb Grubb Little died in 1954 at the age of twenty-six without surviving widow or issue. By reason of his death, without issue, prior to the termination of the trust, his estate and interest in the four per cent share of income and *corpus* of the trust was divested and as to him was neither devisable or descendible. *Seawell v. Cheshire,* 241 N.C. 629, 638, 86 S.E. 2d 256. The question as to the vesting of this share of the trust estate upon the death of Zeb Grubb Little will be discussed herein in proper order.

In Articles XIV and XV of the will testator's widow, Alma Lee Grubb, takes the "residue and remainder" of the income of the trust estate "during the term of her natural life and after her death to . . . Zeb Grubb Little." At the time of the death of Zeb Vance Grubb this income amounted to fifty-two per cent of the total income, the other beneficiaries having been specifically allotted a total of forty-eight per cent. Should Alma Lee Grubb die before the termination of the twenty year trust, her income share for the remainder of the trust term and the corresponding *corpus* at the termination of the twenty year trust is given to Zeb Grubb Little; and should she live beyond the termination of the twenty year trust, she is to have her income share for life and at her death the corresponding share of the *corpus* is given to Zeb Grubb Little. Without more, there was vested in Alma Lee Grubb, at the death of Zeb Vance Grubb, an estate for life in this residual share, and an indefeasible estate in fee in remainder in Zeb Grubb Little. *Trust Co. v. McEwen,* 241 N.C. 166, 168, 84 S.E. 2d 642; *Pinnell v. Dowtin,* 224 N.C. 493, 497, 31 S.E. 2d 467.

At this point serious controversy arises. It is contended that the further provisions of the Articles by express terms prevented the vesting of the remainders in Zeb Grubb Little at the death of testator, the remainders could not vest until the death of the widow and since Zeb Grubb Little predeceased the widow the remainders never

vested in him and go elsewhere. It is further asserted that, if the remainders did vest upon the death of the testator, the gifts in remainder were subject to the defeasance clauses of the Articles and were divested when Zeb Grubb Little died without issue surviving.

After naming the beneficiary of each share of income, including that of Alma Lee Grubb with remainder to Zeb Grubb Little, in section (1), Article XIV provides in section (2) that "if either of the above named (naming all beneficiaries except Alma Lee Grubb, Emma Grubb and Lou Grubb) . . . should die before the full and final termination of the trust herein created," then the shares of the ones so dying shall inure to the benefit of their respective issue, and if "either of said parties shall die without leaving lawful issue surviving . . . their respective shares shall be added to the residue of my estate." Substantially the same provision, in the same sequence, appears in Article XV with respect to the devolution of the *corpus* of the estate upon termination of the trust.

Plaintiff contends that the defeasance clauses do not apply to the remainder interests of Zeb Grubb Little after the life estate of Alma Lee Grubb. He insists that it was the intention of the testator to vest in Zeb Grubb Little an indefeasible estate in fee in remainder. Defendants, on the other hand, contend that testator intended that the defeasance clauses apply with the same force to the remainders as to the four per cent share given to Zeb Grubb Little in the first instance. They point out that the testator made a specific exception in respect to Lou Grubb's share. They also call attention to the provisions of Article XIV making the gifts of income personal to the beneficiaries. It is true that the Articles provide that in case of the death of Emma Grubb, mother of testator, before the termination of the twenty year trust, her share, both income and *corpus*, is to go to Lou Grubb. Lou Grubb is specifically excluded from the defeasance clauses. Defendants, therefore, contend that if testator had also intended to exclude Zeb Grubb Little he would have specifically so provided.

Nevertheless, from a consideration of the will as a whole and the circumstances affecting and known to testator at the time of its execution, it is our opinion, and we so hold, that the testator did not intend to include the remainder interests of Zeb Grubb Little in the defeasance clauses. In the first place, Alma Lee Grubb is excluded from the defeasance clause of Article XIV. And it goes without saying, with respect to Article XV, testator did not intend that his widow remarry and leave issue. Testator provided for distribution of widow's income share, should she die before termination of the twenty year trust, in a different manner from that of the other beneficiaries. In her case,

just as in the case of Emma Grubb, a definite remainderman is named. It is too obvious to be ignored that the defeasance clauses were intended to apply to first takers rather than remaindermen, and Alma Lee Grubb, for the reason above stated, was excluded from the clauses. In making the gifts of income and requiring that they be paid to the beneficiaries in person and not to be assignable, it seems clear that testator had in mind the persons first named in each instance, that is, the first takers. Furthermore, in providing for the defeasances, the language used seems to emphasize the shares. This clause in Article XIV provides, in case of beneficiaries dying without issue surviving, "their *respective shares* shall be added to the residue of my estate." Article XV is substantially the same — "the . . . *share* or *shares* . . . shall inure to the residue or remainder of my estate." Alma Lee Grubb's shares were in each instance either expressly or by irresistable implication excluded. Again, it will be observed that testator gave "the residue, or remainder (of the income estate) to . . . Alma Lee Grubb" and "the remainder (of the *corpus* of the trust), after her death, the same shall immediately vest in Zeb Grubb Little, in fee simple forever." Therefore, it is clear that all defeasances of income go to the widow, together with the "residue" she is already receiving, and at her death the remainder of the income, if the twenty year trust has not terminated, and the corresponding share of the *corpus* to Zeb Grubb Little. In other words, the testator intended that the ultimate residue and remainder of the residuary estate should go to Zeb Grubb Little, for whom he had "the love and affection of a father for his son." Had the testator intended otherwise, he would have contemplated intestacy as to the major portion of his residuary estate. It is not suggested by us that he expected Zeb Grubb Little would predecease the widow. But had he intended to include him in the defeasance clauses as to the ultimate remainders, he must, of necessity have given thought to Little's early death and the consequences. In this case, it would seem that the testator would have made substitute provisions for the ultimate disposition of these substantial remainders. It is generally held that in seeking to discover the intent of the testator there is a presumption against intestacy. *Seawell v. Seawell,* 233 N.C. 735, 740, 65 S.E. 2d 369.

A careful reading of Articles XIV and XV also leads to the conclusion that testator intended the defeasance clauses to apply to the twenty year trust only and not to the trust for the life of the widow. The references most certainly seem to be to the twenty year trust. Article XV, dealing with the distribution of the *corpus*, refers to the disposition "at the expiration of twenty years." That the defeasance

clauses do not apply to the remainders to Zeb Grubb Little, Article XVI is strongly persuasive. It contains the following unqualified language: "This trust is to continue as to the share of Alma Lee Grubb for and during the term of her natural life, and at her death to be terminated and said interest to vest in Zeb Grubb Little, in fee simple." This is also strong argument for the position that the defeasance clauses applied only to the gift strictly involved in the twenty year trust.

But defendants contend that by the express terms of the will it was testator's intention that the remainders not vest until the death of Alma Lee Grubb. In Article XV are these words: ". . . and after her death, the same shall immediately vest in Zeb Grubb Little, in fee simple forever." We do not agree that this expression prevented the vesting of the remainders upon the death of Zeb Vance Grubb. ". . . the court inclines to that construction which will make the title to property left in remainder vested, rather than contingent." *Freeman v. Freeman*, 141 N.C. 97, 98, 53 S.E. 620. " 'The remainder is vested, when, throughout its continuance the remainderman and his heirs have the right to the immediate possession whenever and however the preceding estate is determined; or, in other words, a remainder is vested if, so long as it lasts, the only obstacle to the right of immediate possession by the remainderman is the existence of the preceding estate; or, again, a remainder is vested if it is subject to no condition precedent save the determination of the preceding estate.' It is the general rule that remainders vest at the death of the testator, unless some later time for vesting is clearly expressed in the will, or is necessarily implied therefrom. It is likewise a prevailing rule of construction with us that adverbs of time, and adverbial clauses designating time, do not create a contingency but merely indicate the time when the enjoyment of the estate will begin." *Trust Co. v. McEwen, supra; Priddy & Co. v. Sanderford*, 221 N.C. 422, 424-5, 20 S.E. 2d 341. In determining the intent of a testator greater regard must be given to the dominant purpose of the testator than the use of any particular words. *Trust Co. v. Waddell*, 234 N.C. 454, 461, 67 S.E. 2d 651. Furthermore, the intervention of an active trust will not ordinarily have the effect of postponing the gift itself, but only its enjoyment. *Van Winkle v. Berger*, 228 N.C. 473, 478, 46 S.E. 2d 305; *Coddington v. Stone*, 217 N.C. 714, 719, 9 S.E. 2d 420. We hold that the expression, ". . . after her death, the same shall immediately vest . . .," fixes the time for the enjoyment of the *corpus* of the gift and not the vesting of title. Title to the remainders in Articles XIV, XV and XVI vested in Zeb Grubb Little upon the death of the testator, were devisable

and descendible and passed to plaintiff under the will of Zeb Grubb Little. As will hereinafter appear, the *quantum* of ownership is, as of the date of the judgment below in this case, the original share of the widow at the death of the testator, or fifty-two per cent.

We next consider the question: Who is entitled to receive the Zeb Grubb Little four per cent share of trust income which has accrued since his death and will continue to accrue? A phase of the twenty year trust was formerly before this Court for interpretation. *Trust Co. v. Grubb,* 233 N.C. 22, 62 S.E. 2d 719. Article XIV provides, "the entire net income derived from my trust estate shall be paid monthly, or quarterly, after the expiration of three years from the date of my death and probate of this will, to the following: (named beneficiaries)." The holding: "The payment of anything less than the entire net income accruing from the trust property from and after the date of the death of the testator would not suffice to meet the express directions of the testator. The beneficiaries must receive all, undiminished and unimpaired by any deduction or by application, in whole or in part, to other purposes." From this former decision, it is clear that the income arising from Zeb Grubb Little's four per cent share is absolutely payable and may not be placed in the *corpus* of the trust, notwithstanding the provision of the trust that if beneficiary die without issue surviving his share "shall be added to the residue of my estate." In the sense used, "to the residue of my estate" does not mean to the *corpus.* Such meaning would be repugnant to the absolute direction that all income be distributed. Article XIV deals only with the disposition of the income of the trust estate, therefore, "to the residue of my estate" of necessity refers to the residue of the income estate. Testator gave to Alma Lee Grubb "the residue and remainder" of the income "for and during the term of her natural life." It is significant that at no place in the will is the exact *quantum* of her share specified. At the outset of the trust, her share, by computation, was fifty-two per cent, but the testator consistently avoided any statement specifically designating or limiting the percentage the widow should receive. It follows logically that he intended that she should receive not only the original remainder but also the additions or "residue" arising by reason of other beneficiaries dying without issue. Alma Lee Grubb is entitled to receive the income from the four per cent share of Zeb Grubb Little which has accrued since his death and which will continue to accrue during her lifetime, even if she lives beyond the termination of the twenty year trust.

The disposition of the *corpus* of the Zeb Grubb Little four per cent share, or the income and *corpus* if the widow dies before the termina-

tion of the twenty year trust, presents greater difficulty. In the first place, as already indicated, it is not devisable and descendible as to Zeb Grubb Little and June Carter Little did not acquire it as sole devisee and legatee of Zeb Grubb Little. The case of *Van Winklè v. Berger, supra,* is in point and controlling. There testator set apart $90,000.00, in trust, the income of which was to be paid semi-annually in equal shares to testator's three daughters during the terms of their respective natural lives, and at the death of each her share of the principal to go to her issue, if any, and if no issue survived such share to go into the residuary estate and be distributed as such. Ella, one of the daughters, died without issue. She had a vested one-sixth interest in the residuary estate without contingent limitation, and this one-sixth interest was devisable. She left a will disposing of all her property. Her devisees and legatees claimed one-sixth of that part of the trust fund which went into the residuary estate by reason of Ella's death without issue. In holding that they were not entitled to share in this part of the residuary estate, this Court said:

"The answer to our problem lies in the nature of the contingency upon the happening of which the partial termination of the trust takes place, and the designated part of its principal, or *corpus,* is thrown into the residuary estate.

"That event is to be regarded as the termination of a particular estate, that of the trustees, and also the disappointment of an intervening estate, contingently limited to the issue, if any, of Ella Buchanan. The death of Ella, involved in the contingency, is not merely an event, but a condition to be consummated before the principal should lose its character as a particular legacy and become part of the residuary estate.

The chronology, if we may use that term, contemplated in the will, *the time element,* is a vital consideration in its construction. That Ella Buchanan could take an interest in the will virtually created by the contingency of her own death, involves a formidable legal paradox which appellants seem to circle but not surmount.

"Ninety thousand dollars was separated from the estate and put into a trust fund, dealt with *in particularis,* and made the subject of an intervening contingent bequest. Both in point of law and under the expressed phraseology of the will it was not then a part of the residuary estate, the subject of disposition under Article 6. As a matter of law it could not be in the trust fund and under obligation to a particular legacy, however contingent, and in the residuary estate at the same time; and we find no suggestion of an intent that its inclusion in that category was, or could be, retro-

active. *At that time only was the residuary clause activated and clothed with testamentary authority with respect to the distribution of this fund.* (Citing authorities) Or, to put it more bluntly, it came under the operation of the residuary clause at a time when Ella Buchanan must be, and was dead and unable to take.

"It is true, of course, that the intervention of a trust does not necessarily postpone the title or prevent the vesting of an interest where the person who must ultimately take is certain; although it may postpone enjoyment. That was the situation in *Coddington v. Stone,* 217 N.C., 714, 719, 9 S.E. (2d), 420, but not here. It is the contingent disposition of the *corpus* of the trust and the nature of that contingency with which we are dealing. And here the contingency renders the ultimate taker uncertain.

"If we could dismiss the ever-haunting paradox to which we have referred, it still remains that the passing of the *corpus* of the trust fund into the residuary estate is itself a contingency depending upon the failure of issue, to whom it is first limited, and is, therefore, a contingency involving uncertainty of the beneficiaries, and no interest could vest in Ella Buchanan under such contingency. (Citing authorities)."

The principles stated in the *Van Winkle* case are equally applicable here. To hold that plaintiff acquired, as sole devisee and legatee of Zeb Grubb Little, any title or right to any of the principal or interest of the four per cent share in question, would be to overrule the *Van Winkle* case. This we are not disposed to do.

Having applied the presumption against intestacy in another phase of this case, we now find a situation in which it may not consistently be applied. It is only a rule of construction and must yield when outweighed by logic and general intent. *Entwistle v. Covington, supra.* It is our opinion, and we so hold, that after the death of Alma Lee Grubb, the principal of the four per cent share in question, and the interest, if the twenty year trust has not then terminated, shall be distributed as in case of intestacy. It is seriously contended by certain of the defendants that this share should pass into the residuary trust estate and enlarge pro rata the shares of those entitled to take thereunder, in accordance with the holding in *Buffaloe v. Blalock,* 232 N.C. 105, 59 S.E. 2d 625. It is our opinion, however, that the *Buffaloe* case is factually distinguishable and has no application here. It is true that Articles XIV and XV provide that if any of the specified beneficiaries die without issue the income or *corpus* share or shares "shall be added to the residue of my estate" and "shall inure to the residue or remainder of this trust estate." But, as already

stated, these references to "residue" and "remainder" apply to the remainder of the trust funds after distribution of the specified shares thereof to beneficiaries entitled, that is, to the remainder or portion of income to be received by the widow and to the remainder or portion of the principal from which widow's income is derived. Indeed, all of the questions of construction involved on this appeal are more easily resolved and better understood if the gifts in the twenty year trust set out in section (1), subsections (a) to (h), inclusive, of Article XIV, and sections (1) to (8), inclusive, of Article XV are considered specific bequests, which they really are, and the gifts set out in section (1), subsection (i), of Article XIV, section (9) of Article XV and Article XVI are considered the residuary estate, which they actually are. So, the intent of the testator is not to place this four per cent share in the general residue so as to enlarge the shares of those for whom specific provision was made. Since the estate of Zeb Grubb Little, for the reasons hereinbefore stated, has no right to this share, it of necessity must go intestate. Had a beneficiary, or beneficiaries, other than the one who is also ultimate remainderman, died without issue, another question would be here presented, which we do not now decide. It may never arise.

Article VI of the will is as follows: "I give and bequeath to my brother, Robert Grubb, all of my stock in the Grubb Motor Lines, Inc., together with any and all indebtedness due me by Grubb Motor Lines, Inc." Article XIV wills to Robert Grubb a twenty per cent share of the income of the trust estate "from which is to be deducted the net value of the bequest in Article VI." The trustees valued the bequest in Article VI at $20,803.28. There is apparently no controversy as to the amount involved and, as explained by the court below, "No finding or adjudication has been made as to the amount the Trustees were required to withhold and this judgment is limited solely to the construction of the provisions of the will. . . ." The trustees deducted from the twenty per cent income share of Robert Grubb the full amount of $20,803.28 and placed the same in the *corpus* of the trust estate, that is, the general residue of the estate. Defendant, Alma Lee Grubb, contends that this fund is a part of the income of the estate and under the former decision of this Court must be distributed. *Trust Co. v. Grubb, supra.* She further contends that since, under the terms of the will, it cannot be paid to Robert Grubb or his surviving issue, it goes into the residue of income and is payable to her. The trustee insists that the fund was properly disposed of. In Article XVII of the will, it is provided: "I also authorize (trustees) . . . in the exercise of their discretion, to . . . determine what is prin-

cipal and what is income and what expenses or other charges shall be charged against income and what against principal . . ." Trustee contends that the discretion thus given has not been abused, but disposition of the fund has been made after due consideration of the provisions of the will and the factual situation presented, and that trustees acted impartially and in the exercise of their best judgment.

We agree that the allocation of this fund to the *corpus* of the trust estate was proper. "Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion." Restatement of the Law of Trusts, sec. 187, p. 479. ". . . (I)n general, where a will or trust instrument purports to confer upon an executor or trustee the power to determine what is income and what is principal, the courts . . . have sustained the exercise of the power by such executor or trustee, in the absence of fraud or arbitrary action . . ." Annotation: 118 A.L.R., Income or Principal, p. 843. Of course the trustee will not be given "unlimited power to make allocations as between income and principal in contravention of the intent of the settlor as indicated by the terms of the trust instrument as a whole." Annotation: 27 A.L.R., 2d, Income and Principal, p. 1325. Construing Articles VI and XIV together, it seems clear that the testator desired his brother, Robert Grubb, to have the stock and credits in question, but, in balancing the dispositive provisions of the will, did not intend an outright gift, but made provision for payment therefor from the income gift in Article XIV. Had Robert Grubb renounced the bequest in Article VI, which he had the right to do, he would have been entitled to and would have received the total income bequeathed to him in Article XIV and the property referred to in Article VI would have, without question, become a part of the *corpus* of the residuary trust estate. Robert Grubb, however, elected to take the bequest in Article VI and in so doing elected to pay for same from the income gift of Article XIV. To all intents and purposes, the income in question was distributed and paid out to Robert Grubb and applied by him (after his death, by his surviving issue) to discharge of the obligation imposed by electing to take the bequest in Article VI. The allocation by the trustees was logical, reasonable and in accordance with the intent and meaning of the will.

Trustee and Alma Lee Grubb except to the allowance of attorneys fees as part of the costs of the action to "be paid by (trustee) out of the *corpus* of the trust." Substantial fees were allowed and it is true that the manner of payment places a large proportion of the burden upon the widow. G.S. 6-21 provides: "Costs in the following mat-

ters shall be taxed against either party, or apportioned among the parties, in the discretion of the court: . . . 2. Caveats to wills and any action or proceeding which may require the construction of any will or trust agreement, or to fix the rights and duties of parties thereunder. . . . The word 'costs' as the same appears and is used in this section shall be construed to include reasonable attorneys' fees in such amounts as the court shall in its discretion determine and allow." In the case *sub judice* the taxing of costs, the inclusion therein of attorneys fees and the fixing of reasonable counsel fees are matters within the sound discretion of the trial court. The careful, discreet and learned trial judge who presided in this case was in position to make reasonable appraisal of services rendered by attorneys and the proper assessment of costs. There is nothing in the record to indicate that the fees allowed are unreasonable or that the judge in any way abused his discretion. The cause is fraught with unusual difficulties. The scholarly and exhaustive briefs furnished this Court by all participating counsel are indicative of splendid legal services rendered. We find no grounds upon which to disturb the orders of the court with respect to costs and attorneys fees.

The matters adjudicated below and not discussed here are not the subject of assignments of error, are not in controversy and are affirmed.

We do not undertake to deal with contingencies which have not and may not happen.

The cause is remanded and it is ordered that the judgment be modified in accordance with this opinion.

Modified, affirmed and remanded.