IN THE MATTER OF JONATHAN THOMAS WRIGHT, JUVENILE

No. COA99-77

(Filed 21 March 2000)

**1. Juveniles— transfer of case—reasons for transfer**

The juvenile court did not abuse its discretion in transferring the defendant-juvenile's first-degree sexual offense case to superior court under N.C.G.S. §§ 7A-608 and 7A-610(a) (both statutes

now replaced by N.C.G.S. § 7B-100 et seq.), based on the findings that the juvenile's history indicates prior aggressive tendencies and the public needs to be protected from this type of crime and the sex offenders that commit them, because: (1) N.C.G.S. § 7A-610(c) does not require the trial court to make findings of fact, but only to set forth its reasons for transfer; and (2) the trial court's reasons are supported by the evidence.

**2. Juveniles— transfer of case—factors considered—new statute inapplicable**

The juvenile court did not abuse its discretion in transferring the defendant-juvenile's first-degree sexual offense case to superior court under N.C.G.S. §§ 7A-608 and 7A-610(a) (both statutes now replaced by N.C.G.S. § 7B-100 et seq.), based on failing to consider "the age or the maturity of the juvenile" or his "condition and needs for treatment" under N.C.G.S. § 7B-2203(b), because: (1) N.C.G.S. § 7B-2203(b) is not applicable to this case since it applies to hearings related to acts committed on or after 1 July 1999; (2) defendant cites no statute or case which required the judge to consider these factors at the time of his hearing; and (3) even if consideration of these factors was required, the record reflects that evidence on each factor was presented to the trial court.

**3. Juveniles— transfer of case—chronological age**

The ordinary meaning of the words in N.C.G.S. § 7A-608 reveals that the legislature intended for juveniles who have achieved the chronological age of thirteen years to be subject to the transfer of their case to superior court, and the determination is not based on the juvenile's developmental age.

**4. Constitutional Law— cruel and unusual punishment—possible conviction—purely speculative**

Although the juvenile court transferred defendant-juvenile's case to superior court and defendant argues that his possible conviction of first-degree sexual offense in superior court would constitute cruel and unusual punishment, the courts have no jurisdiction to determine purely speculative matters since the issue of punishment will arise, if at all, only if defendant receives an adverse verdict at trial and is then sentenced for the crime.

Appeal by juvenile from order filed 4 August 1998 by Judge Rodney R. Goodman in Wayne County District Court. Heard in the Court of Appeals 20 October 1999.

**IN RE WRIGHT**

[137 N.C. App. 104 (2000)]

*Attorney General Michael F. Easley, by Assistant Attorney General Elizabeth L. Oxley, for the State.*

*Barnes, Braswell & Haithcock, P.A., by Glenn A. Barfield, for juvenile-appellant.*

JOHN, Judge.

Jonathan T. Wright (Wright), juvenile, appeals the trial court's "Order Transferring Juvenile Case to Superior Court." We affirm.

Pertinent facts and procedural history include the following: A Juvenile Petition was filed 6 May 1998 in Wayne County District Court alleging that

between the dates of March 1, 1998 and April 12, 1998 [Wright] unlawfully, willfully and feloniously did engage in a Sex Offense with [M.], a [male] child under the age of 13 years, in violation of [N.C.G.S. § 14-27.4 (1999)].

At the time alleged, Wright was thirteen years old and M. was eight. Wright was taken into secure custody 12 May 1998, and a probable cause hearing was conducted 4 August 1998.

At the hearing, M. testified he "suck[ed] on" Wright's penis for "[a]bout a minute" because Wright "said he was going to beat me up." M. stated he believed this had happened four times previously, but "[t]he only time I remember was the last time," immediately prior to Easter 1998. H. and J., two juvenile males who resided in the neighborhood and who knew both Wright and M., indicated they had witnessed the Easter incident and corroborated M.'s testimony. In addition, J. testified Wright had stated he was also "going [to] try to get [J.'s] sister to do it." M.'s mother and a Wayne County Sheriff's Department detective were additional witnesses for the State. Wright presented no evidence.

The trial court found probable cause on the charge of first degree sex offense and, upon motion by the State, conducted a second hearing on the issue of whether to transfer Wright's case to superior court for trial pursuant to N.C.G.S. §§ 7A-608 and 7A-610 (1995) (repealed 1 July 1999).[1] The statutes provided in pertinent part:

---

1. These provisions were repealed effective 1 July 1999, *see* 1998 N.C. Sess. Laws ch. 202, §§ 5, 37, and replaced with a new juvenile code, N.C.G.S. § 7B-100 *et seq.* (1999).

The court after notice, hearing, and a finding of probable cause may transfer jurisdiction over a juvenile to superior court if the juvenile was 13 years of age or older at the time the juvenile allegedly committed an offense that would be a felony if committed by an adult.

G.S. § 7A-608.

If probable cause is found . . . , the prosecutor or the juvenile may move that the case be transferred to the superior court for trial as in the case of adults. The judge may proceed to determine whether the needs of the juvenile or the best interest of the State will be served by transfer of the case to superior court for trial as in the case of adults.

G.S. § 7A-610(a).

At this latter phase of the proceedings, several witnesses testified on Wright's behalf. These included members of his church, a neighbor, his school guidance counselor, an employee of the detention center, and Dr. Kurt Luedtke (Dr. Luedtke), a court-appointed expert witness in forensic psychology.

According to Dr. Luedtke, he performed an "independent forensic examination" of Wright on 21 May 1998. Dr. Luedtke concluded "there [wa]s evidence of psychiatric disturbance and evidence that a prodomal psychotic state could be developing," but he did not believe Wright fit the North Carolina Department of Correction profile indicative of a "child rapist or non-violent sexual molester" or of one who commits "aggravated sex crimes [or] sex perversion [crimes]."

Dr. Luedtke's written report noted that Wright, prior to being placed in custody, was

along with other individuals that he had recruited, . . . planning to take over his school . . . . He had a weapon under his bed that his parents had discovered, namely a shotgun, and he had developed an elaborate plan for not only taking over the school by force, but also to possibly bomb it.

. . . .

. . . In his elaborate plan for wanting to "take over the school," he indicates that he did not necessarily want to hurt anybody, but just to scare them all. He also indicates that he did not care if he did kill anyone if they did not "go along" and indicated that he

would begin to kill hostages if the police did not go along with his plan.

Dr. Luedtke testified he viewed Wright's plan as "more fantasy than reality" and as a "delusion." In Dr. Luedtke's opinion, Wright would not pose a risk to the community if accorded proper treatment, and Dr. Luedtke recommended Wright be "placed in a residential treatment environment" rather than incarcerated.

At the close of the hearing, the trial court ordered transfer of the first degree sex offense charge to superior court for trial, finding that:

the needs of the juvenile or the best interest of the State, or both, will be served by transfer of the case to superior court. The reasons for transfer are: . . .

1. the seriousness of the offense, and the fact the [j]uvenile used intimidation and force.

2. under current juvenile law, a juvenile court would have no jurisdiction past 4 years. If the juvenile is found guilty in an adult court, that court can order treatment and have jurisdiction over him for many more years.

3. the juvenile's history indicates prior violent aggressive tendencies. He had a plan for wanting to take over a school and indicated to Dr. Luedtke that he would kill anyone that did not go along with him.

4. the public needs to be protected from this type of crime and the sex offenders that commit them.

5. the State presented 3 eye-witnesses to the crime (the victim and 2 more).

Wright timely appealed.

[1] Among numerous assignments of error directed at the transfer order, Wright first contends the trial court's third and fourth "reasons for transfer" were not supported by the evidence adduced at the hearing.

"Any order of transfer [must] specify the reasons for transfer." G.S. § 7A-610(c). However,

[t]he judge is not required to make findings of fact to support his conclusion that the needs of the juvenile or that the best interest of the State would be served by transferring the case to the

[s]uperior [c]ourt division. It is only required that if he elects to order the transfer, he must state his reasons therefor.

*In re Bunn*, 34 N.C. App. 614, 616, 239 S.E.2d 483, 484 (1977). So long as the trial court has complied with G.S. § 7A-610(c), "the decision to transfer a juvenile's case to superior court lies solely within the sound discretion of the hearing judge," *State v. Green*, 348 N.C. 588, 601, 502 S.E.2d 819, 827 (1998), *cert. denied*, 525 U.S. 1111, 142 L. Ed. 2d 783 (1999), and "that discretion is not subject to review in the absence of a showing of gross abuse," *Bunn*, 34 N.C. App. at 616, 239 S.E.2d at 484.

As noted above, the trial court *sub judice* set forth its "reasons for transfer" in ordering transfer to the superior court. Further, the court's reasons "are supported by evidence on the record from the transfer hearing[; accordingly, there is] sufficient support for the juvenile court judge's discretionary transfer decision . . . ." *Green*, 348 N.C. at 602, 502 S.E.2d at 827. In short, Wright's first assignment of error is unfounded.

[2] Wright next asserts the trial court abused its discretion by failing to consider "the age or the maturity of the juvenile" or his "condition and needs for treatment." In advancing this argument, Wright cites the following provision of the new juvenile code:

In the transfer hearing, the court shall determine whether the protection of the public and the needs of the juvenile will be served by the transfer of the case to superior court and shall consider the following factors:

(1) The age of the juvenile;

(2) The maturity of the juvenile;

(3) The intellectual functioning of the juvenile; [and]

. . . .

(6) Facilities or programs available to the court . . . and the likelihood that the juvenile would benefit from treatment or rehabilitative efforts . . . .

N.C.G.S. § 7B-2203(b) (1999).

However, the foregoing code section is applicable only to hearings related to acts committed on or after 1 July 1999, *see* 1998 N.C. Sess. Laws ch. 202, § 37, and thus is not implicated herein. Moreover,

Wright "cites no statute or case which require[d, at the time of his hearing,] a district court judge to consider" a juvenile's age, maturity, condition, or needs for treatment "before making a transfer decision." *State v. Green*, 124 N.C. App. 269, 276, 477 S.E.2d 182, 185 (1996), *aff'd*, 348 N.C. 588, 502 S.E.2d 819 (1998), *cert. denied*, 525 U.S. 1111, 142 L. Ed. 2d 783 (1999); *see also* N.C.R. App. P. 28(b)(5) ("[a]ssignments of error . . . in support of which no . . . authority [is] cited, will be taken as abandoned").

In any event, assuming *arguendo* consideration of such factors was required, the record reflects that evidence on each was presented to the trial court. *See Green*, 348 N.C. at 600, 502 S.E.2d at 826 (juvenile court deciding transfer "does so with full knowledge of the dispositional alternatives in the juvenile and adult systems. . . . [The court's] decision is also guided by the needs and limitations of the juvenile, as well as the strengths and weaknesses of the juvenile's family.")

For example, Wright acknowledges the trial court without doubt was aware of Wright's age. Further, all Wright's witnesses during the transfer hearing addressed his level of maturity, and Dr. Luedtke testified as to Wright's "condition and needs for treatment." The court also specifically commented that if Wright were "found guilty in an adult court, that court can order treatment," indicating the court's consideration of any need for treatment.

To conclude, we reiterate that transfer of a juvenile case to superior court is solely within the discretion of the trial court, *Bunn*, 34 N.C. App. at 616, 239 S.E.2d at 484, so long as the court has complied with G.S. § 7A-610(c). Such ruling "will not be reversed unless the decision was arbitrary," *Albrecht v. Dorsett*, 131 N.C. App. 502, 508, 508 S.E.2d 319, 323 (1998), or "lacked any basis in reason." *Judkins v. Judkins*, 113 N.C.App. 734, 740, 441 S.E.2d 139, 142, *disc. review denied*, 336 N.C. 781, 447 S.E.2d 424 (1994). We cannot say the trial court's transfer decision in the instant case was either arbitrary, *Albrecht*, 131 N.C. App. at 508, 508 S.E.2d at 323, or without any basis in reason, *Judkins*, 113 N.C.App. at 740, 441 S.E.2d at 142, and we therefore reject Wright's second assignment of error.

[3] Next, Wright insists the transfer statutes

should be construed to prohibit transfer of this juvenile to [s]uperior [c]ourt, because his real age for the purposes of the statute is below the statutory threshold

of thirteen, *see* G.S. § 7A-608. Wright does not claim a chronological age of less than thirteen at the time of the alleged offense, but rather maintains the evidence presented at the hearing

> showed without contradiction that [he] was developmentally, socially, psychologically, and emotionally a child far younger than thirteen . . . .

However, Wright cites no "authorities upon which the appellant relies," N.C.R. App. P. 28(b)(5), for the novel proposition that the transfer statute should be interpreted to require determination of a juvenile's developmental, as opposed to chronological, age. Wright's final assignment of error is therefore deemed abandoned. *Id.* ("[a]ssignments of error . . . in support of which no . . . authority [is] cited, will be taken as abandoned").

Notwithstanding, we note that it is well established that

> [i]n interpreting a statute, it is presumed the General Assembly intended the words it used to have the meaning they have in ordinary speech. When the plain meaning of a statute is unambiguous, a court should go no further in interpreting the statute.

*Nelson v. Battle Forest Friends Meeting*, 335 N.C. 133, 136, 436 S.E.2d 122, 124 (1993) (citation omitted).

Therefore, it must be presumed that, in allowing transfer to superior court of cases of juveniles who are "13 years of age or older," G.S. § 7A-608, the General Assembly intended the "ordinary" meaning of the words employed, *i.e.*, that the cases of juveniles who have achieved the chronological age of thirteen years are subject to transfer. The statute contains no ambiguity nor any indication the General Assembly intended "13 years of age or older" to be construed as developmental or emotional age rather than chronological. Accordingly, we "go no further in interpreting the statute." *Nelson*, 335 N.C. at 136, 436 S.E.2d at 124.

[4] Finally, Wright argues that, if convicted of first degree sex offense in superior court, even the minimum punishment to which he might be subjected, *see* G.S. § 14-27.4(b) and N.C.G.S. § 15A-1340.17 (1999), would constitute cruel and unusual punishment. We do not address this assertion in that

> [t]he courts have no jurisdiction to determine matters purely speculative, enter anticipatory judgments, . . . deal with theoreti-

**LEWIS v. ESTATE OF LEWIS**

[137 N.C. App. 112 (2000)]

cal problems, give advisory opinions, . . . provide for contingencies which may hereafter arise, or give abstract opinions.

*Little v. Trust Co.*, 252 N.C. 229, 243, 113 S.E.2d 689, 700 (1960).

Wright has been neither tried nor convicted of any crime, much less sentenced. The issue of punishment thus is not "ripe for review because it will arise, if at all, only if [Wright] receives [an adverse] verdict" at trial and is then sentenced for the crime of first degree sex offense. *Simmons v. C.W. Myers Trading Post*, 307 N.C. 122, 123, 296 S.E.2d 294, 295 (1982).

Affirmed.

Judges LEWIS and McGEE concur.