JOHN D. SULLIVAN AND CYNTHIA K. SULLIVAN, PARENTS OF JOHN KEEVER SULLIVAN, PETITIONERS V. WAKE COUNTY BOARD OF EDUCATION, BILL FLETCHER, SHEILA TIDWELL AND PATTI HEAD, RESPONDENTS

No. COA03-673

(Filed 20 July 2004)

**Schools and Education— school assignment—new year—new factors—moot appeal**

An appeal of a school assignment was moot because the school year has come and gone, the "red flag" practice (denying further departures from a school) has been abolished, and different factors are now being addressed.

Appeal by petitioners from order entered 3 February 2003 by Judge Henry W. Hight, Jr., in Wake County Superior Court. Heard in the Court of Appeals 1 March 2004.

*Meyer & Meuser, P.A., by Linda K. Wood, Deborah N. Meyer, and John B. Meuser, for petitioner appellants.*

*Tharrington Smith, L.L.P., by Ann L. Majestic and Lisa Lukasik, for defendant appellee.*

McCULLOUGH, Judge.

The case now before us stands in the following posture: Wake County residents John D. and Cynthia K. Sullivan ("petitioners") challenged the decision of the Wake County Board of Education ("Board") to assign petitioners' son, John Keever Sullivan ("John"), to his base school, Dillard Elementary School ("Dillard") and denied their request that John be transferred to Oak Grove Elementary School ("Oak Grove"). Petitioners brought claims under N.C. Gen. Stat. § 115C-116 (2003), the state special education statutes; the Individuals with Disability in Education Act ("IDEA"); the regulations implementing the state special education statutes and IDEA ("regulations"); and the Americans with Disabilities Act ("ADA"). Petitioners named as respondents the Board; an employee of the school system, Sheila Tidwell; and individual members of the Board, Bill Fletcher and Patti Head. The superior court order from which petitioners now appeal contains conclusions of law dismissing the three individually named respondents and dismissing claims under the special education statutes, the IDEA, the regulations, and the ADA. The court concluded as a matter of law that petitioners had not exhausted their administrative remedies under these statutes and regulations. The petitioners did not assign error to the dismissal of these respondents or claims, and thus they are not before us on appellate review. The superior court, in dismissing the above claims and the named respondents, then reviewed the administrative appeal from the Board's final decision denying transfer of John, in accordance with Article 4 of N.C. Gen. Stat. § 150B (2003) as referred to by N.C. Gen. Stat. § 115C-370 (2003). Applying the whole record test, the superior court found substantial evidence to support the Board's decision. Petitioners appealed to this Court.

The underlying facts of the case are these: Shortly before he was to begin kindergarten in the academic year of 2002-2003, John was diagnosed with Sensory Integration Disorder ("SID") and identified as

developmentally delayed. Petitioners received four recommendations from educational and psychological professionals that John would benefit from year-round schooling. Additionally, petitioners sought advice from the Wake County School System's Project Enlightenment, who then wrote on behalf of petitioners recommending John's assignment to Oak Grove.

Dillard runs a traditional nine-month school year, with a long summer; Oak Grove is a year-round magnet school, with shorter, periodic breaks. Oak Grove was the only year-round school to which John was eligible to apply, and is within walking distance of the petitioners' home. Petitioners applied for assignment of John to Oak Grove through the initial lottery process but did not receive placement. The lottery is the traditional means of obtaining assignment in a magnet and year-round school outside a student's attendance zone. Petitioners then sought to have John transferred for the 2002-2003 year, citing John's SID, the four professional recommendations, and the recommendation of Project Enlightenment. These recommendations stated that John would benefit from a year-round school that was close to home for a number of reasons: the year-round school provides a more structured and consistent approach to education and is better able to deal with the symptoms of SID; John's cycle of social integration, activities, sleep, and performance in school would be broken by the long summers of a traditional school year allowing for regression in his development; John would not be able to tolerate a long bus ride or maintain his self-control as there is little structure on a bus; and a walk to school would provide John and his parents a predictable, reliable schedule that would begin his day in a positive manner.

The school administrator reviewed and considered petitioners' transfer request along with the recommendations and denied the request on 21 May 2002. This notice of denial also informed petitioners of their right and the process to appeal.

At the time the school administrator denied the transfer request, Dillard was one of five schools that had a "red flag" designation. The designation of these schools was to limit transfers from them for the 2002-2003 school year. "Red flag" designation arose from concerns of the significant under enrollment in these five schools, and that transfers into magnet and year-round schools would only add to the depletion of their students. Such depletion was feared to seriously jeopardize the ability of each of these schools to satisfy capacity requirements, and would likely have a negative impact on their

SULLIVAN v. WAKE CTY. BD. OF EDUC.

[165 N.C. App. 482 (2004)]

socioeconomic diversity. Thus, the Office of Growth Management (OGM) decided to create the "red flag" designations. The administrative staff of the OGM designated Dillard among the five schools. The designations were used by student assignment staff as a means of assisting the administration in effectively and appropriately addressing the thousands of transfer applications it considered for the 2002-2003 school year. The "red flag" practice was not taken to the Board for review or approval. When the "red flag" designation of certain schools came to the Board's attention during review of over 797 student assignment appeals heard prior to the 2002-2003 school year, the Board expressed disapproval of the practice and directed the student assignment administration to abolish it.

On 12 June 2002, the petitioners' appeal was heard by a two-member panel of the Board. The hearing proceeded as prescribed by N.C. Gen. Stat. § 115C-369. At the hearing, petitioners informed the panel that their request for year-round placement was based upon John's special needs, and presented the recommendations that were attached to the transfer request. The minutes from the hearing reflect John's special needs were considered, as the comments by his name state, "priority," "check with special programs," and "where they can be served?" The petitioners were given approximately 15 minutes to make their argument. Two minutes is generally the time provided. After the petitioners left the hearing, all the hearing panels convened to present each case to the full Board. The panel recommended to the full board that transfer be denied. The full Board vote affirmed this recommendation, but due to the concerns raised, asked the senior administrator of the Office of Student Assignments to send the documentation submitted by petitioners at the hearing to the senior administrator in the Office of Special Programs to review John's Individualized Education Program ("IEP") to determine whether John's need could be met at Dillard. Petitioners' appeal to the Board for John's transfer was officially denied by letter dated 14 June 2004.

Petitioners, pursuant to N.C. Gen. Stat. § 115C-370, petitioned for judicial review of the Board's final decision. In its findings of fact and conclusions of law, the trial court applied the "whole record test" to the facts of this case, and concluded in its 4 February 2003 order that there was substantial evidence to support the Board's decision.[1]

---

1. The trial court's final decree states, "Petitioners' Petition for judicial review is hereby DENIED." However, the court made adequate findings of fact and conclusions of law on the merits of this case, and these are before us on review.

Petitioners then appealed to this Court. Petitioners filed their appellants' brief on 7 July 2003. Respondents then filed a brief in support of their motion to dismiss this appeal as moot on 6 August 2003, and petitioners filed a brief in opposition to that motion on 28 August 2003 (after an extension of time was granted). Respondents then filed their appellees' brief on 5 September 2003 (after an extension of time was granted) which incorporated by reference the mootness argument.

As a threshold matter, we address the mootness issue.

## Mootness

The underlying issue before the Court is whether the Board's denial of John's transfer request for the academic year of 2002-2003 was without a rational basis and arbitrary and capricious, and whether the trial court's findings of fact and conclusions of law affirming the Board are supported by competent evidence. The crux of petitioners' argument is that John's transfer request was denied by the Board based on Dillard's "red flag" designation, and that his special needs were overlooked. Because the 2002-2003 school year has now come and gone, and the school assignment administration's practice of the "red flag" designation of some schools has been abolished by the Board, we agree with respondents that this case is moot and therefore dismiss on those grounds pursuant to the analysis hereunder.

Our Supreme Court has held:

Whenever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law.

*In re Peoples*, 296 N.C. 109, 147, 250 S.E.2d 890, *cert. denied, Peoples v. Judicial Standards Comm.*, 442 U.S. 929, 61 L. Ed. 2d 297 (1979) (citations omitted). Generally, a court will not decide a moot case and this mootness doctrine "represents a form of judicial restraint." *Id.*

The thrust of petitioners' argument on the merits as to John's assignment to Dillard, is that it was based on Dillard's "red flag" designation. There is, however, undisputed evidence of record that the Board did not approve of this means of assignment and did not apply it in reviewing transfer requests. Furthermore, this

practice, used only for the 2002-2003 assignment year now on appeal, has been abolished. In the affidavit of the Senior Director of OGM for the Wake County Public School System, Dr. Ramey Beavers (Dr. Beavers) attests:

> Even in 2002-2003, the "red flag" school designation procedure was not applied by the Board of Education. The Board approved transfer requests that the school administration had denied under its "red flag" practice—including transfer requests out of Dillard Elementary School. The Board learned of the administration's "red flag" school designations in April 2002. Before the 2003-2004 magnet / year-round school selection process began and before transfer requests for the 2003-2004 school year were considered, the Board directed my office to abolish the "red flag schools" designation. The Board of Education's directive was clear: administration was not to consider or apply any "red flag" designation in its school assignment processes going forward and was not to single out particular schools as having transfer limitations. As such, the "red flag" school analysis that applied in 2002-2003 did not apply to the magnet / year-round process or the transfer request process this year (2003-2004), and it will not apply to either process in subsequent years.

As John may apply for a transfer to Oak Grove each year, the issue of the 2002-2003 assignment and the basis of that assignment are moot.

Petitioners argue that the Supreme Court has decided assignment cases on the merits, despite the school year at issue having substantially or almost completely run. *See In Re Hayes*, 261 N.C. 616, 135 S.E.2d 645 (1964); *In re Varner*, 266 N.C. 409, 146 S.E.2d 401 (1966). However, each of these appeals reached the Supreme Court within the relevant school year and presumably when the same factors by the Board were being used to decide transfer requests. In the present appeal, the 2002-2003 school year has come and gone, the "red flag" practice has been abolished, and different factors are being addressed for the 2003-2004 school year's student assignments. In his affidavit, Dr. Beavers states:

> Now that the 2002-2003 school year is over, student assignment decisions applicable to the 2002-2003 school year are over. All parents were entitled to request transfers in the 2002-2003 school year, regardless if whether their request had been made in a previous year. Each individual request for a transfer was considered based upon the new information and data pertaining to the stu-

dent assignment factors outlined in Board policy and procedure and in State statute. The information and data considered for the 2003-2004 school year is different from last year, and decisions about individual student assignments and transfers were made in the context of this new information and data.[2]

Therefore, we hold the issue moot by the fact that the school year has come and gone, and the red flag designations have been abandoned.

Petitioners argue that, if we hold the issue to be moot, we should reach the merits of this case as one "capable of repetition yet evading review," an exception to the mootness doctrine. *In Re Jackson*, 84 N.C. App. 167, 170-71, 352 S.E.2d 449, 452 (1987) (where the Court decided the merits of the conflict between a school system's right to suspend a student for misconduct and the juvenile court's authority to fashion sensitive and appropriate dispositions, even though the school suspension would always end with the school year). To apply this exception, petitioners must show:

"(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again."

*Crumpler v. Thornburg*, 92 N.C. App. 719, 723, 375 S.E.2d 708, 711 (citation omitted), *disc. review denied*, 324 N.C. 543, 380 S.E.2d 770 (1989).

There is no reasonable expectation that the same complaining party would be subject to the same factors used by the school board in making its assignment/transfer determinations for any school year beyond 2002-2003.

School assignments are more than a repetition of legal issues arising under the same law; a school must consider an abundance of synergistic factors that change annually when determining student assignments for a particular year. For example, assignment plans contribute annual data on a school's performance, diversity, enrollment, capacity, school programs, and transportation. To hold this case as anything but moot would require decisions on innumerable

---

2. We note that the undisputed evidence shows petitioners reapplied to have John in the lottery to attend Oak Grove for the 2003-2004 school year, but John was not chosen. Petitioners' request for transfer was then denied again, as was his appeal before the Board. Petitioners did not seek judicial review of this final Board decision. At no time during the 2003-2004 process was the red flag practice in place.

stale claims which would require our review of factors no longer relevant to the evolving annual assignment considerations of the school board.

For the reasons set forth above, this appeal is

Dismissed.

Judges WYNN and LEVINSON concur.